IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| **JEFFREY MAIER** *et al.* | ) |
| | ) |
| v. | ) No. 3:22-cv-00339 |
| | ) |
| **BOUNDS PERFORMANCE, INC.** *et al.* | ) |

**To: Honorable William L. Campbell, Jr., United States District Judge**

## REPORT AND RECOMMENDATION

Pending before the Court is the unopposed motion of Plaintiffs Jeffrey Maier and Jami Maier (the "Plaintiffs") (Docket No. 38) for default judgment against Defendants Bounds Performance, Inc. ("Bounds Performance") and Jenifer M. Scharsch ("Scharsch") (together, the "Defendants"). This motion was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72,[1] and Local Rules 72.01 and 72.02. (Docket No. 40.) The undersigned has reviewed and considered the motions, supporting memorandum of law,[2] exhibits, and declarations appended to the filings. For the reasons stated below, the undersigned finds that this matter can be resolved without hearing and respectfully recommends that Plaintiffs' motion for default judgment be GRANTED with other requested relief.

---

[1] Unless otherwise noted, all references to rules are to the Federal Rules of Civil Procedure.

[2] The Court notes that Plaintiffs' supporting memorandum of law includes all citations to legal authority in footnotes, which is a format that the undersigned generally disfavors. Further, the footnotes are not in 12-point font, as required by Local Rule 7.03(a).

# I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs filed this federal question case against Defendants to collect amounts that Plaintiffs contend were withheld from Plaintiff Jeffrey Maier's compensation for payment of insurance premiums, but which were misappropriated by Defendants in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and common law and contractual duties owed to Plaintiffs and for other relief. (Docket No. 1.) The complaint also raises claims of conversion and insurance fraud. (*Id.*) Defendants were originally represented by counsel and Scharsch answered the complaint. (Docket No. 11.) Defendant Bounds Performance filed bankruptcy and the case was stayed against Bounds Performance. (Docket Nos. 12 and 13.) However, the bankruptcy case was dismissed shortly after filing. (Docket No. 14.) Bounds Performance then answered the complaint (Docket No. 16) and this case proceeded against both Defendants (Docket No. 15).

Following an initial case management conference, a scheduling order was entered that set deadlines for discovery and other case management events. (Docket No. 20.) Within the month following entry of the case management order, Defendants' counsel moved to withdraw. (Docket No. 24.) Withdrawal was approved and Defendants were given time to retain new counsel. (Docket No. 25.) Bounds Performance was cautioned that it could not proceed without counsel and that failure to retain counsel would be grounds for entry of default judgment. (*Id.* at 1–2.) Scharsch was cautioned that if she elected to proceed *pro se*, the leniency afforded to her was not without limits and she would not be permitted to disregard the rules of procedure or to ignore the Court's orders. (*Id.* at 2–3.) Additionally, Scharsch was expressly warned that failing to comply with the rules of procedure and the Court's orders could result in any of the remedies authorized by Rule 16(f), including default judgment. (*Id.* at 3.)

Upon the failure of Bounds Performance to retain counsel as directed, Plaintiffs moved for entry of default. (Docket No. 26.) Plaintiffs also filed a status report of Defendants' deficiencies in discovery and otherwise in complying the case management schedule. (Docket No. 27.) The Court ordered Defendants to show cause why default judgment should not be entered against them, including for Bounds Performance's failure to retain counsel and their combined failure to satisfy their discovery and other obligations as litigants. (Docket No. 28.) Defendants failed to respond or otherwise show cause by the February 15, 2023 deadline as ordered. The Clerk of Court subsequently entered default against Bounds Performance. (Docket No. 29.) Default was also entered against Scharsch by memorandum opinion of the Court. (Docket No. 34.)

Now, Plaintiffs seek default judgment against Defendants, individually and jointly and severally, for breaches of their fiduciary duties, which Plaintiffs contend are established by Defendants' defaults. Specifically, Plaintiffs maintain that Defendants breached their fiduciary duties owed to the Plan and to Plaintiffs when Defendants, among other things, (1) wrongfully withheld funds from Mr. Maier's paychecks; (2) failed to deposit Mr. Maier's contributions to the Plan; (3) commingled the plan assets with other company or personal assets; (4) used the withheld plan assets for purposes other than funding the Plan; (5) failed to notify Plaintiffs that the withheld plan assets were not remitted to the Plan; (6) failed to keep Plaintiffs reasonably informed as to the status of the Plan and plan assets; (7) failed to ensure that the Plan was adequately funded and received all contributions and plan assets; and, (8) falsely misrepresented that the amounts deducted from Mr. Maier's paycheck were properly remitted to the Plan. (Docket No. 39 at 12.) Plaintiffs seek the following amounts in damages from both Defendants: (1) a principal amount of $27,956.17; (2) pre-judgment interest of $2,791.10; (3) post-judgment interest of an unspecified amount; and (4) attorney's fees of an unspecified amount. (Docket No. 39 at 20–21.)  Plaintiffs

served Defendants with a copy of their motion for default judgment. (Docket No. 38 at 3.) Defendants failed to respond.

## II.  LEGAL STANDARDS AND ANALYSIS

### A.  Default Judgment

Under Rule 55(b)(2), a court may enter a default judgment if that court has jurisdiction, and the movant has met certain procedural requirements. *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 108–09 (6th Cir. 1995). As is true in the present case, default judgment is appropriate where the party against whom the default judgment is sought has appeared but has subsequently failed to respond. Fed. R. Civ. P. 55(b)(2); *see also Vesligaj v. Peterson*, 331 F. App'x. 351, 354–55 (6th Cir. 2009) (district court did not abuse discretion in granting default judgment against defendant who originally participated in action but failed to timely defend); *Trustees of Iron Workers' Local No. 25 Pension Fund v. Quality Steel Fabricating & Erecting, Inc.*, Case No. 19-11127, 2020 WL 7645710 (E.D. Mich. Dec. 23, 2020) (granting default judgment against defaulted defendants who participated in case but failed to defend).[3] For a court to grant a motion for default judgment, the complaint must state a claim upon which relief can be granted. *Allstate Life Ins. Co. of New York v. Tyler-Howard*, No. 3:19-cv-00276, 2019 WL 4963230 at *1 (M.D. Tenn. Oct. 8, 2019) (internal citations omitted).

Once default has been entered against a party under Rule 55, the defaulting party is deemed to have admitted all the well-pleaded factual allegations in the complaint regarding liability, including any jurisdictional averments. *Visioneering Constr. v. U.S. Fid. & Guar.*, 661 F.2d 119, 124 (6th Cir. 1981); *Antoine*, 66 F.3d at 110–11. Even without this admission, the Court finds that

---

[3] Default judgment is also warranted when a party ignores the Court's orders, as Defendants have also plainly done here. *Walt Disney Co. v. Great American Corp.*, No. 2:91-00075, 1993 WL 546781, at *5 n.6 (M.D. Tenn. June 22, 1993) (collection of cases). *See also* Fed. R. Civ. P. 16(f).

jurisdiction is properly asserted over Defendants here. This case raises a federal question as Plaintiffs allege ERISA violations among other state law claims arising from the same controversy. Where a district court has subject matter jurisdiction over federal question claims, it may assert supplemental jurisdiction over any state-law claims that are related to, and form part of, the same case or controversy. 28 U.S.C. § 1367. *See also* Fed. R. Civ. P. 18(a).

Due to Defendants' defaults, the Court is entitled to accept as true the well-pleaded factual allegations of the complaint. *I Love Juice Bar Franchising, LLC v. ILJB Charlotte Juice, LLC*, No. 3:19-cv-00981, 2020 WL 4735031, at *3 (M.D. Tenn. Aug. 14, 2020) (citing *Vesligaj*, 331 F. App'x at 355). Default is not, however, considered an admission of damages. *Vesligaj*, 331 F. App'x at 355 ("Where damages are unliquidated a default admits only [the defaulting party's] liability and the amount of damages must be proved.").

To determine damages, the trial court can, but is not required to, hold an evidentiary hearing. "[A] hearing is not necessarily required if the moving party submits uncontested, sworn affidavits sufficient to establish the amount of damages." *Broad. Music, Inc. v. Marler*, No. 1:09-cv-193, 2009 WL 3785878, at *5 (E.D. Tenn. Nov. 12, 2009); *see also* Fed. R. Civ. P. 55(b)(2) (A district court "may conduct hearings . . . when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."); *Vesligaj*, 331 F. App'x at 354 (Rule 55(b)(2), "by its terms, allows but does not require the district court to conduct an evidentiary hearing").

Plaintiffs seek entry of default judgment against Defendants and to hold Defendants jointly and severally liable for the following amounts: (1) a principal amount of $27,956.17;[4] (2) pre-judgment interest of $2,791.10;[5] (3) post-judgment interest of an unspecified amount; and (4) attorney's fees of an unspecified amount. (Docket No. 39 at 20–21.) Because the damages in this case – unpaid wages, out-of-pocket medical expenses, and interest – are certain, and supported by a sworn affidavit (Docket No. 37), the Court concludes that an evidentiary hearing is unnecessary. Fed. R. Civ. P. 55(b).

**B.     Defendants' Liability**

Plaintiffs argue that Defendants are liable as fiduciaries under § 1109(a). 29 U.S.C. § 1109(a). Plaintiffs maintain that Defendants are jointly and severally liable for all damages sought in this action. Default judgment on well-pleaded allegations establishes only liability, not the extent of damages for which a particular Defendant is responsible. *Antoine*, 66 F.3d at 110. The Court must, therefore, determine the extent to which each Defendant may be held liable for the full amount of damages claimed by Plaintiffs.

First, the Court finds that the Plan is an employee benefit plan covered by ERISA. "Employee benefit plans" are defined as plans that are either an "employee welfare benefit plan" or an "employee pension benefit plan," or both. 29 U.S.C. § 1002(3). An "employee welfare benefit plan" is defined by ERISA as:

---

[4] In one instance, Plaintiffs state a different principal amount of $27,362.17. (Docket No. 39 at 21.) However, this appears to be an error. Plaintiffs more consistently request a principal amount of $27,956.17. (Docket No. 37 at 4; Docket No. 39 at 20.) Additionally, the calculations laid out by Plaintiffs most consistently result in a principal amount of $27,956.17. (Docket No. 37 at 4–5; Docket No. 37-1 at 2.)

[5] Plaintiffs inconsistently state the amount of pre-judgment interest sought: $2,795.62 (Docket No. 37 at 5), $4,365.76 (Docket No. 39 at 20), and $2,791.10 (Docket No. 39 at 21). The Court disregards these discrepancies and awards an amount that differs from Plaintiffs' request.

> [A]ny plan, fund, or program which was hereto or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise.

29 U.S.C. § 1002(1). Given this broad definition, the allegations in the complaint and the entire record amply demonstrate that the Plan is an ERISA plan. (Docket No. 1 at ¶¶ 11–15; Docket No. 37 at ¶ 6. ) *See Int'l Resources, Inc. v. New York Life Ins. Co.*, 950 F.2d 294, 97–98 (6th Cir. 1991) (barebones medical plans for medical insurance coverage, which are a common method by which employers provide health and other welfare benefits to employees, can fall under ERISA) (internal citations omitted).

Further, Defendants' individual liability for breaches of their respective duties as fiduciaries is established by the well-pleaded allegations of the complaint. (Docket No. 1 at ¶¶ 19–20, 22–30, 43–49.) A fiduciary for purposes of ERISA is defined as someone "who exercises any discretionary authority or discretionary control respecting management of [the plan] or exercises any authority or control respecting management or disposition of [the plan] assets" or has "any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). This definition of a fiduciary is "a functional one and is intended to be broader that the common-law definition such that the issue of whether one is considered a fiduciary does not turn upon formal designations." *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 438 (6th Cir. 2006) (internal citations omitted).

The Court finds that the well-pleaded allegations of the complaint, which, due to Defendants' default are accepted as true, establish a foundational basis that each Defendant is a fiduciary under ERISA. (Docket No. 1 at ¶¶ 4–6, 36–37, 41.)  This is true for Defendant Bounds Performance because it was the Plan sponsor and Plan administrator and for Defendant Scharsch

because she exercised substantial dominion and control over the assets and liabilities of the Plan. (*Id.* at ¶¶ 4–5; Docket No. 37 at ¶¶ 8, 16.)

Although the complaint alleges multiple breaches of duties of loyalty and care, Plaintiffs' motion for default judgment focuses primarily on Defendants' conduct as fiduciaries in misappropriation of plan assets for wrongful purposes and misrepresentations regarding the status of the plan and Plaintiffs' ability to receive plan benefits. (Docket No. 39 at 12–17.) Plaintiffs' complaint alleges that Defendants: withheld insurance premiums from Plaintiff Jeffrey Maier's paycheck and failed to deposit those contributions into the Plan (Docket No. 1 at ¶¶ 43, 48); commingled the withheld insurance premiums with other company or personal assets (*id*. at ¶ 44); and diverted withheld insurance premiums for purposes other than funding plan benefits (*id*. at ¶ 45).

Plan fiduciaries are expressly prohibited by ERISA from "deal[ing] with the assets of the plan in [their] own interest or for [their] own account." 29 U.S.C. § 1106(b)(1). *See also* 29 U.S.C. § 1104(a)(1) (fiduciary must discharge duties solely in the interests of plan participants and beneficiaries for the exclusive purpose of providing benefits to participants and the beneficiaries and defraying reasonable expenses of administering the plan). In addition, ERISA provides that "the assets of the plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries." 29 U.S.C. § 1103(c)(1). The language of ERISA makes clear that fiduciaries who breach their duties

> shall be personally liable to make good to such plan any losses to the plan resulting from such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate.

29 U.S.C. § 1109(a). Plaintiffs' complaint, taken as true, establishes that Defendants misappropriated plan funds. (Docket No. 1 at ¶¶ 19–20, 22–30, 43–49.)

While the fiduciary breaches for misappropriation are alone sufficient to impose personal liability against Defendants, the Court also finds well-established bases that Defendants mispresented that Plaintiffs were covered by the Plan and entitled to benefits under the Plan. (*Id.* at ¶¶ 23–30; Docket No. 37 at ¶¶ 9, 11–17.) Misleading communications to plan participants "regarding plan administration (for example, eligibility under a plan, the extent of benefits under a plan) will support a claim for a breach of fiduciary duty." *Drennan v. General Motors Corp.*, 977 F.2d 246, 251 (6th Cir. 1992) (quoting *Berlin v. Michigan Bell Telephone Co.*, 858 F.2d 1154, 1163 (6th Cir. 1988)). A fiduciary must give complete and accurate information to plan participants, including by advising plan beneficiaries of circumstances that might threaten their interests under the plan. *Id*. (internal citations omitted). Here, the complaint and Plaintiff Maier's declaration amply demonstrate that Defendants breached their fiduciary duties to Plaintiffs by failing to keep them informed of all the material facts affecting their interests under the Plan and by failing to inform Plaintiffs that the insurance was no longer active or had been discontinued, including because the insurance premiums withheld from Plaintiff Jeffrey Maier's paycheck were not contributed to the Plan.

Plaintiffs further contend that Defendants are jointly and severally liable, each for the breaches of the others as co-fiduciaries and as co-tortfeasors under ERISA's co-fiduciary liability provisions. Co-fiduciary liability under ERISA can be established by any of the following: (1) the fiduciary participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) a fiduciary, by its failure to comply with section 1104(a)(1) in the administration of the specific responsibilities which give

rise to the status as a fiduciary, enables such other fiduciary to commit a breach; or, (3) a fiduciary has knowledge of a breach by such other fiduciary, unless the fiduciary makes reasonable efforts under the circumstances to remedy the breach. 29 U.S.C. § 1105(a).

Here, the well-pleaded allegations establish that Scharsch acted both in her own fiduciary capacity and on behalf of the company and Defendant Bounds Performance. (Docket No. 1 at ¶¶ 4–5, 11–13, 52–53.) In each of these capacities, Scharsch and Bounds Performance knowingly participated in the fiduciary breaches committed by the other, enabled the other to commit breaches of its fiduciary duties, and had knowledge of the others' fiduciary breaches.[6] Accordingly, Scharsch and Bounds Performance are jointly and severally liable to Plaintiffs.

Additionally, Plaintiffs contend that Defendants are liable to Plaintiff Jeffrey Maier for wages wrongfully withheld from his final paycheck following his resignation from Bounds Performance. Plaintiffs acknowledge that this amount, claimed to be $791.10, is separate from the ERISA claim because the withholding occurred after Maier's employment, and therefore participation the Plan, terminated. The Court finds that the allegations in the complaint, which are accepted as true (Docket No. 1 at ¶¶ 32–34), establish that Bounds Performance is liable for this amount but there is no basis in the complaint from which the Court can find that Scharsch is individually liable.

---

[6] While this might resemble "alter ego" liability, the Court expressly clarifies that it is not. Without evidence that Scharsch acted in her individual capacity as a fiduciary, she arguably could not be found to be liable as an alter ego of Bounds Performance because the complaint does not allege sufficient facts to pierce the corporate veil. Further, "ERISA does not abrogate the ordinary rule that shareholders are not personally liable for the obligations of a corporation." *Pension Benefit Guar. Corp. v. Findlay Indus., Inc.*, 902 F.3d 597, 614 (6th Cir. 2018); 29 U.S.C. § 1301(b). But, as discussed in more detail above, the well-pleaded allegations establish that Scharsch herself acted as a fiduciary, independent of and in addition to, Bounds Performance.

C.  **Damages**

Plaintiffs seek the following amounts in damages from both Defendants: (1) a principal amount of $27,956.17; (2) pre-judgment interest of $2,791.10; (3) post-judgment interest of an unspecified amount; and (4) attorney's fees of an unspecified amount. (Docket No. 39 at 20–21.) The Court finds that some of these amounts are proper as detailed below.

1.  Principal Amount

Plaintiffs request a principal amount of $27,956.17. (Docket No. 37 at 4.) This principal amount accounts for $12,397.87 of out-of-pocket medical expenses, $14,767.20 of misappropriated withheld wages, and $791.10 of final unpaid wages. (Docket No. 37 at 4–5.) The Court finds that an award of this amount is appropriate, broken down as follows: $27,165.07 assessed against Defendants Scharsch and Bounds Performance individually and jointly and severally, and $791.10 assessed against solely against Bounds Performance.

2.  Pre-Judgment Interest

Plaintiffs seek damages in the form of pre-judgment interest from the date of Defendants' last breach on September 3, 2021 through the date on which this Court found Defendants in default, on March 27, 2023. (Docket No. 39 at 20.) The Court finds that awarding pre-judgment interest to Plaintiffs is appropriate. Because ERISA does not address the propriety of awarding pre-judgment interest, such interest may be awarded at the district court's discretion. *Bricklayers' Pension Trust Fund v. Taiariol*, 671 F.2d 988, 990 (6th Cir. 1982) (pre-judgment interest appropriate in ERISA action when employer breached contractual obligations).

However, the Court declines Plaintiffs' invitation to apply the maximum rate of 10% prescribed by applicable Tennessee law as it would constitute a windfall. (Docket No. 39 at 20.)

Plaintiffs have provided no argument as to why this maximum effective rate should apply. Where a case involves a federal question, it is within the district court's discretion to determine an appropriate interest rate. *E.E.O.C. v. Wooster Brush Co. Emp'rs Relief Assoc.*, 727 F.2d 566, 579 (6th Cir. 1984). To calculate the pre-judgment interest rate, courts often apply the method prescribed by 28 U.S.C. § 1961 which is used to calculate post-judgment interest. *Schumacher v. AK Steel Corp. Ret. Accumulation Pension Plan*, 711 F.3d 675, 679–80 (6th Cir. 2013); *Rybarczyk v. TRW, Inc.*, 235 F.3d 975, 986 (6th Cir. 2000).

Under this method, interest shall be calculated "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the [end] date" and "compounded annually." 28 U.S.C. § 1961. The Court finds this method reasonable.

Applying this method, the Court finds that the appropriate rate is the weekly average one-year constant maturity Treasury yield published by the Board of Governors of the Federal Reserve System, which amounts to 4.49%. 28 U.S.C. § 1961. Applying this rate to the principal amount of $27,956.17 over the period of 570 days results in an accrued pre-judgment interest amount of $1,982.62. The Court finds that an award of this amount is appropriate, broken down as follows: $1,926.52 in pre-judgment interest assessed against Defendants Scharsch and Bounds Performance individually and jointly and severally and $56.10 assessed solely against Bounds Performance.

3. Post-Judgment Interest

Plaintiffs also seek damages in the form of post-judgment interest. The Court finds that an award of post-judgment interest will properly compensate Plaintiffs for the continued loss of use of their funds. Under federal law, post-judgment interest is prescribed by statute at the rate "equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of

Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961. Accordingly, the Court finds that Plaintiffs are entitled to post-judgment interest beginning the date the judgment is entered. The Court finds that the weekly average one-year constant maturity Treasury yield published by the Board of Governors of the Federal Reserve for the week preceding entry of judgment is appropriate. The Court finds that an award computed at this rate as to both the judgment imposed against Scharsch and Bounds Performance jointly and severally and the judgment solely against Bounds Performance in accordance with 28 U.S.C. § 1961(b) is appropriate.

4. <u>Attorney's Fees</u>

Plaintiff seeks damages in the form of attorney's fees. In cases alleging ERISA violations, 29 U.S.C. § 1132(g) governs whether attorney's fees may be awarded to the Plaintiff. ERISA authorizes "reasonable attorney's fees and costs of the action, to be paid by the defendant." 29 U.S.C. § 1132(g)(2)(D). As the prevailing party, Plaintiffs are entitled to reasonable attorney's fees pursuant to 29 U.S.C. § 1132(g). Plaintiffs may file a motion for an award of attorney's fees in accordance with Local Rule 54.01.

### III. RECOMMENDATION

Based on the foregoing, it is respectfully RECOMMENDED that:

1. Plaintiffs' unopposed motion (Docket No. 38) for default judgment against Defendants Bounds Performance, Inc. and Jenifer M. Scharsch individually and jointly and severally be GRANTED;

13
Case 3:22-cv-00339   Document 41   Filed 11/09/23   Page 13 of 15 PageID #: 244

2. Plaintiffs be awarded damages in the following amounts:

   a. Principal amount of $27,165.07 assessed against Bounds Performance and Scharsch individually and jointly and severally, and principal amount of $791.10 assessed against solely against Bounds Performance;

   b. Pre-judgment interest of $1,926.52 against Bounds Performance and Scharsch jointly and severally, and pre-judgment interest of $56.10 against Bounds Performance solely, for a total of $1,982.62;

   c. Post-judgment interest accruing at a rate to be computed in accordance with 28 U.S.C. § 1961(b); and

   d. Reasonable attorney's fees in an amount to be determined by subsequent motion;

3. A final judgment be entered in this action in accordance with Federal Rule of Civil Procedure 58; and

4. Within thirty (30) days of the date of the final judgment in this action, Plaintiffs shall file a motion for an award of attorney's fees and related nontaxable expenses in accordance with Local Rule 54.01.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Fed. R. of Civ. P. 72(b)(2) and Local Rule 72.02(b). Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States*

*v. Walters*, 638 F.2d 947 (6th Cir. 1981). Any response to the objections must be filed within fourteen (14) days after service of objections. *See* Fed. R. Civ. P. 72(b)(2) and Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge